IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO


| | | |
|---|---|---|
| RIODEJUONEROL HUDSON | ) | CASE NO. 1:14-cv-002069 |
| *aka* Rio, | ) | |
| | ) | |
| Petitioner, | ) | JUDGE JEFFREY J. HELMICK |
| | ) | |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| BRIAN COOK, *Warden*, | ) | KATHLEEN B. BURKE |
| | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |
| | ) | |

Petitioner Riodejuonerol (*aka* Rio) Hudson ("Petitioner" or "Hudson"), through counsel, filed this habeas corpus action pursuant to 28 U.S.C. § 2254. Doc. 1 ("Petition"). Hudson challenges the constitutionality of his conviction and sentence in *State v. Hudson*, Case No. CR-546677 (Cuyahoga County). Following a jury trial, Hudson was found guilty of murder, with forfeiture specifications. Doc. 5-5. The trial court sentenced Hudson to a prison sentence of 15 years to life. Doc. 5-6.

This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2. For the reasons set forth below, the undersigned recommends that the Court **DENY and/or DISMISS** Hudson's Petition (Doc. 1).

Hudson's Motion for Status Conference (Doc. 11) is **DENIED.** Hudson's request for discovery and request for evidentiary hearing (Doc. 8, p. 25) are **DENIED**.

# I.    Factual Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, the state court's factual findings are presumed correct.  The petitioner has the burden of rebutting that presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008) *cert. denied,* 129 S. Ct. 2878 (2009). The Ohio Court of Appeals summarized the facts underlying Hudson's conviction as follows:

{¶ 3} The charge arose from an incident that occurred on August 17, 2010. Hudson went to a hospital where his girlfriend was about to have a baby. Because Hudson had forgotten his seizure medication, his mother drove him home to get it. They parked in the street outside his home. Hudson saw the victim, Mario Seaborn, and observed him drinking a can of an alcoholic beverage, Four Loko. Hudson testified that Seaborn began yelling profanities at him and made threats upon his life. The scene escalated into a fight in the street between Hudson and Seaborn. There were several witnesses to the fight.

{¶ 4} During the fight, Hudson was observed striking Seaborn with a bottle and Seaborn struck Hudson with a chain he wore around his neck. Witnesses testified that it appeared the fight was over, and Hudson headed toward his house. Hudson testified that Seaborn was threatening his and his mother's lives.

{¶ 5} Hudson proceeded to go into his house to retrieve his medicine. He also grabbed a knife. He claimed he intended to use the knife to scare Seaborn so that he could get in the car and get back to the hospital, though he did not expect Seaborn to just walk away. Witnesses observed Hudson run out of the house toward Seaborn. Hudson stated he showed Seaborn the knife and asked if he could leave. Seaborn swung his chain at Hudson. The two were fighting. Witnesses observed Hudson striking Seaborn, and then Seaborn fell to the ground. Hudson dropped a knife and was heard apologizing to the victim. Seaborn was bleeding from the neck, and 911 was called. Hudson left the scene and was eventually apprehended by the police. Hudson testified he did not know how Seaborn got stabbed in the neck.

{¶ 6} A chain and two knives were among the items recovered from the scene. DNA matching Seaborn (major contributor) and Hudson (minor contributor) was found on one of the knife blades. The second knife blade had a DNA match to Seaborn as the major contributor, and the minor contributor was inconclusive. The handle of each knife had a DNA mixture for which Seaborn and Hudson could not be excluded as possible contributors.

2

{¶ 7} Seaborn was hospitalized and died approximately five months after the incident. The doctor who performed the autopsy found two recent stab wounds, one to the neck and one to the trunk. The doctor also reviewed the corresponding transection of the spinal cord, which resulted in quadriplegia and associated complications. The cause of death was "acute bronchopneumonia due to quadriplegia, due to recent stab wound of the neck, with cervical spinal cord and vertebral artery injuries."

*State v. Hudson*, 2012 WL 1067888, * 1, 2012-Ohio-1345 (Ohio App. Mar. 29, 2012); *see also*

Doc. 5-16, pp. 3-5.

## II.     Procedural Background

### A.     State Conviction

On February 3, 2011, the Cuyahoga County Grand Jury indicted Hudson on one count of aggravated murder in violation of O.R.C. § 2903.01(A) with a forfeiture of a weapon specification in violation of O.R.C. § 2941.1417(A).  Doc. 5-3.  During trial, the trial court granted Hudson's motion for acquittal as to the charge of aggravated murder, finding prior calculation and design had not been shown.  Doc. 5-16, p. 3, ¶ 2, Doc. 5-4.   The trial court concluded that there was evidence sufficient to proceed with trial on the lesser included offense of murder under O.R.C. § 2903.02(A).  Doc. 5-16, p. 3, ¶ 2, Doc. 5-4.   The jury returned a verdict of guilty of murder under O.R.C. § 2903.02 with forfeiture specifications under the indictment.  Doc. 5-5.   On June 8, 2011, the trial court sentenced Hudson to a prison term of 15 years to life.  Doc. 5-5.

### B.     Direct appeal

On June 30, 2011, Hudson, through counsel, filed a Notice of Appeal in the Eighth District Court of Appeals from his conviction and sentence.  Doc. 5-13.  In his appellate brief (Doc. 5-14), Hudson raised the following assignments of error:

1.  The Appellant was denied equal protection of law pursuant to the Fourteenth Amendment to the United States Constitution due to purposeful racial discrimination by the state in the jury selection process and failure of the trial court to follow applicable law.

2.  The verdict below was against the manifest weight of the evidence.

3.  The requirement under Ohio law that the defendant bears the burden of proof for the defense of self-defense is unconstitutional in light of recent U.S. Supreme Court decisions pertaining to the Second Amendment right to keep and bear arms.

Doc. 5-14, pp. 12-24.  The State of Ohio filed its brief.  Doc. 5-15.  On March 29, 2012, the Eighth District Court of Appeals affirmed the trial court's judgment.  Doc. 5-16.  Hudson did not appeal the Eighth District Court of Appeals' March 29, 2012, judgment.

**C.     Application to reopen direct appeal – App. R. 26(B)**

On June 26, 2012, Hudson, through counsel, filed an Ohio Appellate Rule 26(B) Application to reopen direct appeal.  Doc. 15-17.  In seeking to reopen his direct appeal on the basis of ineffective assistance of appellate counsel, Hudson raised the following assignment of error:

1.     Appellate counsel was ineffective under the Sixth and Fourteenth Amendments of the federal Constitution for failure to raise ineffective assistance of trial counsel for failure to request a jury instruction on "defense of another."

Doc. 5-17, p. 4.  On August 3, 2012, the State of Ohio filed its opposition to Hudson's application for reopening.  Doc. 5-18.  On October 23, 2012, the Eighth District Court of Appeals denied Hudson's App. R. 26(B) application on the merits.  Doc. 5-19, Doc. 5-20.

On December 7, 2012, Hudson, through counsel, filed a Notice of Appeal with the Supreme Court of Ohio.  Doc. 5-21, Doc. 5-22.  In his Memorandum in Support of Jurisdiction (Doc. 5-23), Hudson presented the following propositions of law:

1. Once a "genuine issue" of appellate counsel's ineffectiveness has been shown, then a Court of Appeals must order briefing on the merits rather than deciding the merits simply on the App R 26(B) application.

2. Appellate counsel was ineffective under the Sixth and Fourteenth Amendments of the federal Constitution when he failed to raise the ineffectiveness of trial counsel for failing to request a "defense of another" jury instruction as warranted under Ohio law.

Doc. 5-23, pp. 2, 8-10.  On January 7, 2013, the State of Ohio filed its opposition to Hudson's Memorandum in Support of Jurisdiction.  Doc. 5-24.  On February 20, 2013, the Supreme Court of Ohio declined jurisdiction of the appeal.  Doc. 5-25.  Hudson did not take a further appeal from that decision.

**D.      Petition for post-conviction relief is denied**

On March 7, 2012, Hudson, through counsel, filed a Petition for Post-conviction Relief pursuant to O.R.C. § 2953.21.  Doc. 5-26.   On March 27, 2012, Petitioner subsequently filed a First Amended Petition for Post-Conviction Relief.  Doc. 5-2, p. 3, Doc. 5-27.  Hudson claimed:

1. Trial counsel was ineffective for failing to request a jury instruction on defense of another.

2. Trial counsel was ineffective for failing to properly investigate or file a motion requesting the assistance of a private investigators and failing to investigate and present available witnesses, including Jordan Appleton who was present at the scene, and character witnesses Doug Vest, Tracy Jones, Travis Jones, and Taushe Moses.

3. Trial counsel was ineffective for failing to investigate and present evidence regarding the effects of the "Four Loko" beverage the victim was drinking to excess on the night of the offense.

4. The jury was confused by the jury instructions as they pertained to the manslaughter instruction.

5. The cumulative effect of the errors prevented Hudson from receiving a fair trial.

Doc. 5-26, pp. 2-13, Doc. 5-27, pp. 2-13.   On April 23, 2012, the State of Ohio filed its

Response to Hudson's request for post-conviction relief.  Doc. 5-28.  On May 16, 2012, the trial

court issued findings of fact and conclusions of law and denied Hudson's request for post-

conviction relief.  Doc. 5-29.

On June 8, 2012, Hudson, through counsel, filed a notice of appeal from the trial court's

May 16, 2012, denial of his request for post-conviction relief.  Doc. 5-31.  In his August 22,

2012, appellate brief (Doc. 5-32), Hudson raised the following assignments of error:

1.   The doctrine of res judicata did not bar the claims set forth by appellant
and the trial court's finding is not supported by the record and violates the
14th Amendment of the federal Constitution.

2.   An evidentiary hearing should have been conducted since the Appellant
supported his petition with evidence de hors the record that supported the
relief he sought and the failure to conduct such hearing violated R.C.
2953.21 and the Fourteenth Amendment of the federal Constitution.

3.   The trial court erred in failing to allow appellant to conduct discovery in
violation of the Fourteenth Amendment of the federal Constitution and
Ohio law.

4.   The trial court failed to follow well established rules for the resolution of
federal claims in violation of the federal Constitution.

5.   Counsel was ineffective under the Sixth and Fourteenth Amendments of
the federal Constitution for failing to secure an investigator and then
present available witnesses.

6.   Counsel was ineffective under the Sixth and Fourteenth Amendments of
the federal Constitution for failing to investigate and present the unusual
effects of Four Loko.

7.   The cumulative errors deprived the appellant of a fair trial under the Sixth
and Fourteenth Amendments of the federal Constitution.

Doc. 5-32, pp. 2, 5, 10-27.  On October 11, 2012, the State of Ohio filed its brief.  Doc. 5-30, p.

1, Doc. 5-33.  On April 11, 2013, the Eighth District Court of Appeals affirmed the trial court's

denial of Hudson's request for post-conviction relief.  Doc. 5-34, Doc. 5-35.

On May 23, 2013, through counsel, Hudson filed a notice of appeal with the Supreme Court of Ohio (Doc. 5-36, Doc. 5-37) and Memorandum in Support of Jurisdiction (Doc. 5-36, Doc. 5-38). In his Memorandum in Support of Jurisdiction, Hudson presented the following propositions of law:

1. The doctrine of res judicata did not bar the claims set forth by appellant and the lower court's finding is not supported by the record, is contrary to Ohio law and violates the 14th Amendment of the federal Constitution.

2. An evidentiary hearing must be granted where Appellant supports his petition with evidence dehors the record that supports the relief he seeks and the failure to conduct such hearing violates R.C. 2953.21 and the Fourteenth Amendment of the federal Constitution.

3. The lower court's refusal to allow appellant to conduct discovery violated the Fourteenth Amendment of the federal Constitution and Ohio law.

4. The lower courts failed to follow well established rules for the resolution of federal claims in violation of the federal Constitution.

5. Counsel was ineffective under the Sixth and Fourteenth Amendments of the federal Constitution and also the Ohio Constitution for failing to secure an investigator and then present available witnesses and the effects of the beverage Four Loko.

Doc. 5-38, pp. 2, 6-16. On September 25, 2013, the Supreme Court of Ohio declined jurisdiction. Doc. 5-39.

## E.    Federal habeas corpus

On September 17, 2014, through counsel, Hudson filed his Petition asserting five grounds for relief. Doc. 1. Respondent filed an Answer/Return of Writ. Doc. 4. Petitioner filed a Traverse. Doc. 8. Each ground for relief is discussed more fully below in Section III.B.

### III.    Law and Analysis

**A.    Standard of Review under AEDPA**

The provisions of the Antiterrorism and  Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 ("AEDPA"), apply to petitions filed after the effective date of the AEDPA.  *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007).  In particular, the controlling AEDPA provision states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  "A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'"  *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)).  "A state court's adjudication only results in an 'unreasonable application' of clearly established federal law when 'the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'"  *Id*. at 599-600 (quoting *Williams*, 529 U.S. at 413).  "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous."

*Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).  "The state court's application of clearly established law must be objectively unreasonable."  *Id.*

In order to obtain federal habeas corpus relief, a petitioner must establish that the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Bobby v. Dixon*, 132 S. Ct. 26, 27 (2011) (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011).  This bar is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal."  *Harrington*, 562 U.S. 86, 102-103 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).  In short, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Id*. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The petitioner carries the burden of proof.  *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

In his Traverse, Petitioner contends that AEDPA is unconstitutional, arguing that "AEDPA improperly and unconstitutionally restricts a federal court's ability to remedy federal Constitutional violations" and "violates the separation of powers."  Doc. 8, pp. 7-8.  Petitioner's argument is not supported by controlling precedent.  Accordingly, as set forth below, in reviewing Petitioner's Petition, AEDPA has been applied.

**B.**     **Grounds for relief**

**1.  Ground  One should be DENIED**

**Ground One**: Appellate counsel was ineffective under the Sixth and Fourteenth Amendments of the federal Constitution when he failed to raise the ineffectiveness of trial counsel for failing to request a "defense of another" jury instruction as warranted by Ohio law.

Doc. 1, pp. 16-18.

Hudson presented his Ground One claim in his App. R. 26(B) application to reopen his direct appeal (Doc. 5-17, p. 4) and in his second proposition of law in his memorandum in support of jurisdiction (Doc. 5-23, pp. 2, 9-10).

The right to effective assistance of counsel extends to the first appeal as of right.  *Evitts v. Lucey*, 469 U.S. 387 (1984).  *Strickland v. Washington*, 466 U.S. 668 (1984), establishes the standard for assessing claims of ineffective assistance of counsel, including those relating to appellate counsel.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (finding that *Strickland* provided the proper standard for addressing whether appellate counsel was ineffective for failing to file a merits brief).

Under the *Strickland* standard, to establish that his attorney was constitutionally ineffective, Hudson must demonstrate that (1) the attorney made such serious errors he was not functioning as "counsel" guaranteed by the Sixth Amendment; and (2) counsel's allegedly deficient performance prejudiced the defense.  *Strickland*, 466 U.S. at 687.

Under the first prong of the *Strickland* test, a petitioner must show that counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case.  *Id*. at 688.  "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."  *Id.* at 689.  Thus, judicial scrutiny of counsel's performance under *Strickland* is highly deferential because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or

omission of counsel was unreasonable" and, in order to conduct a fair assessment of counsel's performance, every effort must be made "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* As recently restated by the Supreme Court, in order to combat the "natural tendency" to speculate as to whether another strategy may have been more successful, the reasonableness of counsel's challenged performance is to be judged as of the time of counsel's performance. *Maryland, v. Kulbicki*, 136 S.Ct. 2, 4 (2015) (per curiam) (relying on *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) and *Strickland*, 446 U.S. at 690).

To satisfy the second, "prejudice," prong of the *Strickland* test, a petitioner must demonstrate that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Smith v. Jago*, 888 F.2d 399, 404 (6th Cir. 1989)  (quoting *Strickland,* 466 U.S. at 691).

More particularly with respect to ineffective assistance of appellate counsel claims, the Supreme Court has noted that, "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones v. Barnes*, 463 U.S. 745, 751-752 (1983).  Accordingly, appellate "counsel has no obligation to raise every possible claim, and the decision of which among the possible claims to pursue is ordinarily entrusted to counsel's professional judgment." *McFarland v. Yukins*, 356 F.3d 688, 710 (6th Cir. 2004) (relying on *Jones v. Barnes*, 463 U.S. 745, 751-54 and *Smith v. Murray*, 477 U.S. 527, 536 (1986)).  Counsel's failure to raise an issue on appeal cannot be ineffective assistance unless there is a

reasonable probability that inclusion of the issue would have changed the result of the appeal. *McFarland*, 356 F.3d at 699.  Further, "appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit."  *Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003).  Relevant considerations in analyzing performance of appellate counsel include whether the omitted issues were significant and obvious; whether there was arguably contrary authority on the omitted issues; and whether the omitted issues were clearly stronger that those presented.  *Mapes v. Coyle*, 171 F.3d 408, 427 (6th Cir. 1999).

When a state court reaches the merits of an ineffective-assistance of counsel claim, federal habeas courts provide AEDPA deference to that adjudication under § 2254(d).  *Perkins v. McKee*, 411 Fed. Appx. 822, 828 (6th Cir. 2011).  "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  *Harrington*, 562 U.S. at 99.  This is so even where a state court's opinion lacks detailed analysis or explanation.  In *Harrington*, the Supreme Court held and reconfirmed "that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'"  562 U.S. at 100.

Also, in *Harrington*, the Supreme Court emphasized the double layer of deference that federal courts must give state courts in reviewing *Strickland* claims under AEDPA:

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement. . . . An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. . . . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under §

2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Perkins*, 411 Fed. Appx. at 828 (quoting *Harrington,* 131 S.Ct. 770, 786-788).


In considering Hudson's application to reopen his direct appeal based on a claim of ineffective assistance of appellate counsel, the Eighth District Court of Appeals concluded that the claim had no merit and denied Hudson's App. R. 26(B) application.  More particularly, the state court of appeals stated:

{¶ 1} On June 26, 2012, the applicant, Riodejuonerol Hudson, pursuant to App.R. 26(B), applied to reopen this court's judgment in *State v. Hudson,* 8th Dist. No. 96986, 2012–Ohio–1345, in which this court affirmed Hudson's conviction for murder. Hudson asserts that his appellate counsel should have argued that his trial counsel was ineffective for failing to request a jury instruction on "defense of another." On August 3, 2012, the state of Ohio, through the Cuyahoga County Prosecutor, filed a brief in opposition. For the following reasons, this court denies the application to reopen.

{¶ 2} On August 17, 2010, Hudson was at a hospital with his girlfriend who was about to have their baby. Hudson has long suffered from seizures and needed to take his medicine, which was back at his home. Thus, his mother, accompanied by two friends, drove Hudson to his home and parked in the street in front of the house. When Hudson emerged from the car, Mario Seaborn, an acquaintance and neighbor of Hudson, began yelling profanities and threats toward Hudson. Hudson testified that he asked Seaborn to leave him alone, and Seaborn replied, "shut the * * * up before I kill you." Hudson then asked Seaborn to respect his mother, and the victim replied by hitting Hudson in the face with a chain. (Tr. 573–574.) A fight ensued. When it appeared that the fight was finished, Hudson went into his home and retrieved his medicine and a knife.

{¶ 3} Hudson claimed that he intended to use the knife to scare Seaborn so that he could get back in the car, but he did not expect Seaborn to just walk away. Hudson and his mother testified that Seaborn was making threats to both of them. The mother stated that Seaborn pushed her down when she tried to stop the fight. Other witnesses testified that Hudson charged Seaborn. When the fight resumed, Hudson mortally wounded Seaborn by stabbing him.

{¶ 4} At trial, Hudson claimed self-defense and sought to prevent a jury instruction on the lesser included offense of voluntary manslaughter. The trial judge instructed on self-defense and voluntary manslaughter. Nevertheless, the

jury found Hudson guilty of murder, and the trial judge sentenced him to 15 years to life.

{¶ 5} On appeal, counsel argued that the verdict was against the manifest weight of the evidence, that jurors were improperly excluded pursuant to *Batson,* and that Ohio's law on self-defense is improper—the burden of establishing self-defense should not be on the defendant. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Now Hudson submits that his appellate counsel should have argued that his trial counsel was ineffective for not requesting a jury instruction on the defense of others.

{¶ 6} In order to establish a claim of ineffective assistance of counsel, the applicant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); and *State v. Reed,* 74 Ohio St.3d 534, 1996–Ohio–21, 660 N.E.2d 456.

{¶ 7} In *Strickland,* the United States Supreme Court ruled that judicial scrutiny of an attorney's work must be highly deferential. The Court noted that it is all too tempting for a defendant to second-guess his lawyer after conviction and that it would be all too easy for a court, examining an unsuccessful defense in hindsight, to conclude that a particular act or omission was deficient. Therefore, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052.

{¶ 8} Specifically, in regard to claims of ineffective assistance of appellate counsel, the United States Supreme Court has upheld the appellate advocate's prerogative to decide strategy and tactics by selecting what he thinks are the most promising arguments out of all possible contentions. The court noted: "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones v. Barnes,* 463 U.S. 745, 751–752, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). Indeed, including weaker arguments might lessen the impact of the stronger ones. Accordingly, the Court ruled that judges should not second-guess reasonable professional judgments and impose on appellate counsel the duty to raise every "colorable" issue. Such rules would disserve the goal of vigorous and effective advocacy. The Supreme Court of Ohio reaffirmed these principles in *State v. Allen,* 77 Ohio St.3d 172, 1996–Ohio–366, 672 N.E.2d 638.

{¶ 9} Moreover, even if a petitioner establishes that an error by his lawyer was professionally unreasonable under all the circumstances of the case, the petitioner must further establish prejudice: but for the unreasonable error there is a reasonable probability that the results of the proceeding would have been

different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. A court need not determine whether counsel's performance was deficient before examining prejudice suffered by the defendant as a result of alleged deficiencies.

{¶ 10} Hudson has not established prejudice. If the jury did not find Hudson's claim of self-defense persuasive, when Hudson was fighting and Seaborn was making threats to Hudson, then there is little reason to believe that the jury would have found a "defense of others" strategy persuasive. The court further notes that although the mother testified that Seaborn pushed her down, she did not seem to believe that she was in danger. (Tr. 535.)

{¶ 11} Moreover, appellate counsel would have had to overcome the presumption that trial counsel's plan of straight-forward arguing self-defense was sound trial strategy. It is understandable how an appellate counsel in the exercise of professional judgment would decline to argue this issue when confronted with the difficult burden of undermining trial counsel's strategy of simply arguing self-defense.

{¶ 12} Accordingly, this court denies the application to reopen.

*State v. Hudson*, 2012 WL 5288762, *1-3 (Ohio App. Ct. Oct. 23, 2012); *see also* Doc. 5-20.

Hudson contends that, because the state court of appeals denied his App. R. 26(B) application without briefing on the merits, ADEPA deference is not owed to the state court's determination regarding his ineffective assistance of appellate counsel claim. Doc. 8, p. 11. However, both Hudson and the State of Ohio submitted arguments to the state court of appeals regarding Hudson's claim that appellate counsel was ineffective for failing to raise as error trial counsel's failure to request a jury instruction on "defense of another." Doc. 5-17 (Hudson's Application to Re-Open Direct Appeal Pursuant to App. R. 26(B)); Doc. 5-18 (Brief in Opposition to Defendant's Application for Reopening). Further, as is clear from the state court of appeals' October 23, 2012, decision denying Hudson's App. R. 26(B) application, the state court of appeals considered Hudson's claim of ineffective assistance of appellate counsel in light of the *Strickland* standard and found it to be without merit. Thus, since the state court of appeals considered the merits of the claim, AEDPA deference applies.

Hudson contends that, because trial counsel did not request a "defense of another" jury instruction, he was denied the ability to present a complete defense.  Doc. 8, p. 13.  Therefore, he argues that his appellate counsel was constitutionally ineffective in failing to raise trial counsel's failure to request the jury instruction as error.  Doc. 8, p. 13.   However, in light of the double layer of deference that applies to state court ineffective assistance of counsel determinations, Hudson has not demonstrated that the state court of appeals' determination that Hudson could not establish prejudice under the *Strickland* prejudice prong was contrary to or an unreasonable application of clearly established federal law.  Accordingly, the undersigned recommends that the Court **DENY** Ground One.

### 2.  Ground Two should be DENIED

**Ground Two**:   Counsel was ineffective under the Sixth and Fourteenth Amendments of the federal Constitution and also the Ohio Constitution for failing to secure an investigator and then present available witnesses and the effects of the beverage Four Loko.

Doc. 1, pp. 18-23.

Hudson presented his Ground Two claim in his petition for post-conviction relief (Doc. 5-26, pp. 5-10, Doc. 5-27, pp. 5-10), as his fifth and sixth assignments of error in his appeal to the state court of appeals from the trial court's denial of his petition for post-conviction relief (Doc. 5-32, pp. 20-27), and  as his fifth proposition of law in his Memorandum in Support of Jurisdiction filed with the Supreme Court of Ohio (Doc. 5-38, pp. 11-16).

In considering Hudson's assignments of error contained in his appeal from the trial court's denial of his request for post-conviction relief, the Eighth District Court of Appeals concluded that the claims that Hudson now raises in Ground Two were without merit.  More particularly, the state court of appeals stated:

{¶ 8} The trial court determined that Hudson's claims of ineffective assistance of trial counsel did not warrant postconviction relief. The court concluded that the claim regarding an instruction on the defense of another was barred by res judicata. The court also concluded that Evid.R. 404(A) and Evid.R. 602 barred introduction of the additional witnesses listed in Hudson's petition for postconviction relief, and that, in any event, testimony from these witnesses would have been cumulative, biased, and would not have changed the result at trial. The court additionally ruled that the newspaper articles and the Wikipedia article concerning "Four Loko," were insufficient to warrant a new trial in the absence of expert testimony supporting the alleged negative effects of this beverage. Finally, the trial court concluded that the juror's affidavit regarding his deliberative process was inadmissible under Evid.R. 606(B) and was insufficient to impeach the verdict.

\*\*\*

{¶ 26} The fifth and sixth assignments of error state:

Counsel was ineffective under the Sixth and Fourteenth Amendments to the federal Constitution for failing to secure an investigator then present available defenses.

Counsel was ineffective under the Sixth and Fourteenth Amendments to the federal Constitution for failing to investigate and present the unusual effects of Four Loko.

{¶ 27} Res judicata bars a petitioner from repackaging evidence or issues that either were, or could have been, raised in the context of the petitioner's trial or direct appeal. *State v. Cochran,* 10th Dist. No. 12AP–73, 2012–Ohio–4077, ¶ 11.

{¶ 28} In order to establish a claim of ineffective assistance of counsel, it must be shown that an attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

{¶ 29} In order to establish deficient performance, it must be shown that, under the totality of the circumstances, counsel's representation fell below an objective standard of reasonableness. *Id.* at 688. A court "must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Id.* at 689. Debatable trial tactics and strategies generally do not constitute deficient performance. *State v. Phillips,* 74 Ohio St.3d 72, 85, 1995–Ohio–171, 656 N.E.2d 643.

{¶ 30} In order to establish prejudice, it must be shown that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland,* 466 U.S. at 694. A reasonable

probability is "a probability sufficient to undermine confidence in the outcome" of the proceeding. *Id.*

{¶ 31} As to Hudson's claim that his trial counsel was ineffective for failing to request an investigator and for failing to properly investigate the case and present testimony from Appleton, Doug Vest, Tracy Jones, Travis Jones, and Taushe Moses, this claim is not well taken for the reasons set forth in our discussion of the first and second assignments of error.[1] In short, the decisions as to which witnesses to interview are within the purview of defense counsel's trial strategy and tactics. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland* at 690–691. Further, there was no affidavit or other evidence to support the claim regarding purported eyewitness Appleton. The others, as noted by the trial court, were not at the scene of the crime and their testimony does not bear upon the

---

[1] In discussing the first and second assignments of error, the state court of appeals stated in part:

{¶ 15} As to the claim that Hudson's trial counsel should have hired an investigator to find key witnesses, including alleged eyewitness Appleton, Hudson failed to present an affidavit from this alleged fact witness or other evidentiary support for this portion of the claim for relief. R.C. 2953.21(C).

{¶ 16} As to Hudson's claim that trial counsel failed to present other witnesses concerning his good "characteristics," we note that decisions as to the evidence to be introduced and the witnesses to interview are within the purview of defense counsel's trial strategy and tactics. *State v. Silverman,* 10th Dist. Nos. 06AP–1278–1280, 2007–Ohio–6498; *State v. Cline,* 10th Dist. No. 05AP–869, 2006–Ohio–4782, ¶ 22. This rule likewise extends to the decision as to whether or not to call character witnesses. *State v. Williams,* 10th Dist. No. 05AP–339, 2006–Ohio–2197, ¶ 28. In any event, these newly identified individuals did not witness the incident, so there is no basis upon which we may conclude that Hudson was prejudiced by their absence at trial. As noted by the trial court, these individuals were not at the scene of the crime and their testimony does not bear upon the operative facts of this matter. *Accord State v. Briscoe,* 8th Dist. No. 77832, Ohio App. LEXIS 5505, 2000 WL 1738361 (Nov. 22, 2000).

{¶ 17} In accordance with the foregoing, the first assignment of error is without merit.

{¶ 18} The second assignment of error states:

***

{¶ 20} In this matter, Hudson's claim regarding an instruction on the defense of another was barred by res judicata. His claim regarding his trial counsel's failure to locate alleged eyewitness Appleton was not properly supported. The claim regarding counsel's failure to present the other witnesses simply challenged a tactical decision insofar as counsel did not present testimony from character witnesses. The claim regarding the beverage Four Loko is without merit. The claim regarding cumulative error is without merit in the absence of any other meritorious claim. Accordingly, the trial court did not err in concluding that Hudson had not established substantive grounds for relief, so he was not entitled to an evidentiary hearing. R.C. 2953.21(C).

{¶ 21} The second assignment of error is without merit.

*State v. Hudson*, 2013 WL 1462082, * 3-4, 2013-Ohio-1444 (Ohio App. Ct. Apr. 11, 2013).

operative facts of this matter. *Accord State v. Briscoe,* 8th Dist. No. 77832, Ohio App. LEXIS 5505, 2000 WL 1738361 (Nov. 22, 2000).

{¶ 32} With regard to Hudson's claim that his trial counsel was ineffective for failing to "investigate and present evidence regarding the unusual effects of the alcoholic beverages that the victim was drinking on the night of his death," we note that at trial, Hudson testified that he observed the victim, Seaborn, drinking a can of an alcoholic beverage, Four Loko, and Seaborn began yelling profanities at Hudson and made threats upon his life. *Hudson I.* The evidence presented by defense counsel therefore linked the beverage to the victim's aggressiveness. In any event, the articles submitted by Hudson state that some health officials believe that Four Loko is dangerous to consumers, may "delay feelings of drunkenness," "has potential health risks," that individuals who "combine alcohol and caffeine are more likely to suffer alcohol-related injuries," and "may take risks that they otherwise might not take," and may experience "dehydration" or "blackouts." As such, the evidence "does not advance the petitioner's claim beyond mere hypothesis and a desire for further discovery." *State v. Lawson,* 103 Ohio App.3d 307, 659 N.E.2d 362 (12th Dist.1995).

\*\*\*

{¶ 35} Moreover, an "instruction to the effect the jury must consider the principal charge first does not prevent consideration of all submitted offenses or set an agenda for the jury deliberations and does not invade the province of the jury." *State v. Thomas,* 40 Ohio St.3d 213, 533 N.E.2d 286 (1988), quoting *State v. Ogden,* 35 Or.App. 91, 98, 580 P.2d 1049 (1978). In any event, it is clear that Hudson could have argued on direct appeal that the instructions were misleading or erroneous, but did not do so. The claim, therefore, is barred by res judicata.

{¶ 36} Further, because this court has previously determined that there was sufficient evidence to support Hudson's conviction for murder and that this conviction is not against the manifest weight of the evidence, we can discern no prejudice. *Accord State v. Hillman,* 10th Dist. Nos. 06AP–1230 and 07AP–728, 2008–Ohio–2341, ¶ 47.

{¶ 37} The fifth and sixth assignments of error are without merit.

*State v. Hudson*, 2013 WL 1462082, * 2, 5-7, 2013-Ohio-1444 (Ohio App. Ct. Apr. 11, 2013).

In seeking habeas relief in Ground Two, Hudson appears to be arguing that the state court incorrectly assessed the relevance of certain evidence as it pertained to the defense of self-defense. Doc. 8, pp. 15-18. However, his challenges to the state court's interpretation of state evidentiary rules and/or state law defenses are futile because "a state court's interpretation of

state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas." *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)). Moreover, even if Hudson could demonstrate that his counsel's investigative strategies were not reasonable, under the highly deferential standard that applies to ineffective assistance of counsel claims and state determinations regarding said claims, Hudson has failed to demonstrate that the state court's determination that Hudson could not satisfy the prejudice prong under *Strickland* was contrary to or an unreasonable application of clearly established federal law. Accordingly, the undersigned recommends that the Court **DENY** Ground Two.

### 3. Grounds Three, Four and Five should be DISMISSED

> **Ground Three**: The Ohio courts failed to follow well established rules for the resolution of federal claims in violation of the federal Constitution.

Doc. 1, pp. 23-26.

> **Ground Four**: Ohio's refusal to allow Mr. Hudson to conduct discovery violated the Fourteenth Amendment of the federal Constitution.

Doc. 1, p. 26.

> **Ground Five**: An evidentiary hearing was required in the Ohio trial court where Hudson supported his post conviction petition with evidence dehors the record and the failure to conduct such hearing violated R.C. 2953.21 and the Fourteenth Amendment of the federal Constitution.

Doc. 1, pp. 27-28.

Hudson presented his Ground Three, Four and Five claims as his second, third and fourth assignments of error in his appeal from the trial court's denial of his petition for post-conviction relief (Doc. 5-32, pp. 11-19) and as his second, third and fourth propositions of law in his Memorandum in Support of Jurisdiction filed with the Supreme Court of Ohio (Doc. 5-38, pp. 7-11).

In Grounds Three, Four and Five, Hudson presents claims pertaining to the state court's handling of his post-conviction petition, arguing that the state court should have allowed more discovery or development of the facts, including through an evidentiary hearing, prior to denying his post-conviction petition.  Doc. 1, pp. 23-27.

In Ground Three, Hudson argues "It has long been settled that a state court cannot dismiss a well-pleased federal claim without giving the pleader an opportunity for fact development in support of the claim."  Doc. 1, p. 23 (internal citations omitted).  In Ground Four, Hudson argues that the state court's denial of discovery was a violation of his constitutional rights.  Doc. 1, p. 26.   In Ground Five, Hudson argues that the state court erred in not granting an evidentiary hearing prior to denying his post-conviction petition. Doc. 1, p. 27.

Hudson claims that the state court of appeals and the Respondent ignored Ground Three. Doc. 8, p. 19.  However, contrary to Hudson's suggestion, neither the state court nor the Respondent ignored Ground Three.  The state court of appeals concluded that Hudson's third and fourth assignments of error (Ground Three and Four in this case) were interrelated and without merit.  Doc. 5-35, pp. 10-11, ¶¶ 22-25.   Respondent argues that Ground Three and Four, which are interrelated in that they allege due process violations in connection with the post-conviction process because discovery was not allowed, are not cognizable on federal habeas review and/or without merit. Doc. 4, pp. 26-29.

Ohio provides Ohio prisoners with a process by which they can assert claims that their federal constitutional rights have been violated.  *See* O.R.C. § 2953.21 et seq.; *see also Schulte v. Koneth*, 1998 WL 553630, *2 (Ohio App. Ct. July 10, 1998).  Hudson was not denied the right to seek post-conviction relief in the state court.   As part of that process, a hearing under O.R.C. § 2953.21 is not automatically required.  *See Schulte*, 1998 WL 553630, * 2 (finding that the

Supreme Court in *Young v. Ragen* (1949), 337 U.S. 235, 69 S.Ct. 1073, 93 L.Ed. 1333, determined that "prisoners who have been convicted in state courts must be afforded a mechanism by which they can assert claims that their federal constitutional rights have been violated" but *Young* "does not require appellant to have been given a hearing on a meritless petition"); *see also State v. Jackson*, 64 Ohio St.2d 107, 110 (1980).  Additionally, there is no right to discovery in state post-conviction proceedings. *State v. Cooey*, 1994 WL 201009, * 17 (Ohio App. Ct. May 25, 1994).   The trial court considered his petition for post-conviction relief but concluded that relief was not warranted and the Ohio Court of Appeals considered all of Hudson's clams regarding the post-conviction proceedings and concluded that the trial court did not err.  Doc. 5-29, Doc. 5-35, pp. 9-11.

Moreover, the Sixth Circuit has held that claims challenging state post-conviction proceedings cannot be brought under the federal habeas corpus statute, 28 U.S.C. § 2254.  *Kirby v. Dutton*, 794 F.2d 245 (6th Cir. 1986).  "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  *Kirby*, 794 F.2d at 246 (quoting *Preiser v. Rodriquez*, 411 U.S. 475, 484 (1973)).   In Grounds Three, Four and Five, Hudson is challenging the trial court's denial of his post-conviction petition without additional discovery or hearing.  Since those challenges are not attacks on the underlying conviction but rather attacks on the procedure during the state collateral proceedings, the claims asserted in Grounds Three, Four and Five are not cognizable in this case.[2]  *Kirby*, 794 F.2d 245.

---

[2] Hudson relies on *Herman v. Claudy*, 350 U.S. 119 (1956) for his contention that he is entitled to federal habeas relief because the state court's handling of his post-conviction petition amounted to a violation of his federal constitutional rights.  Doc. 8, pp. 19-21.  However, *Herman* is distinguishable in that it was an appeal from a denial of a state court petition; it did not involve a petition for federal habeas relief. *Id.*  Further, the Supreme Court in *Herman* found that the petitioner should not have been "denied a hearing merely because the allegations of his petition were contradicted by the prosecuting officers." *Herman*, 350 U.S. at 123.  In Hudson's case, the trial court considered his post-conviction claims and found no basis upon which to grant relief.  Doc. 5-29.

Based on the foregoing, the undersigned recommends that Court **DISMISS** Grounds Three, Four and Five as not cognizable on federal habeas review.

### IV.     Conclusion and Recommendation

For the reasons stated herein, the undersigned recommends that the Court **DENY and/or DISMISS** Hudson's Petition (Doc. 1).

Hudson's Motion for Status Conference (Doc. 11) is **DENIED**.   Hudson's request for discovery and request for evidentiary hearing (Doc. 8, p. 25) are **DENIED**.


Dated: August 30, 2016

_____
Kathleen B. Burke
United States Magistrate Judge


### <u>OBJECTIONS</u>

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).